# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| EDWARD R. POWERS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 04-3048-CV-S-RED |
| ) | |
| AUTO ZONE, INC., ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

NOW before the Court is the Motion for Summary Judgment (Doc. 27), Suggestions in Support of Motion for Summary Judgment (Doc. 28), Suggestions in Opposition to Motion for Summary Judgment (Doc. 33), Defendant's Reply to Plaintiff's Suggestions in Opposition to Defendant's Motion For Summary Judgment (Doc. 37).

### I. FACTUAL BACKGROUND

The Court finds the relevant facts to be as follows. For purposes of discussing and analyzing Defendant's Summary Judgment Motion, the facts will be accepted in the light most favorable to Plaintiff, the nonmoving party. Plaintiff was hired by Auto Zone on February 9, 2001. He was 51 at the time he was hired. Powers' duties consisted of delivering parts to commercial accounts. Plaintiff claims that his job was limited to being a commercial driver and did not include assisting in retail due to Plaintiff's physical limitations. Defendant has produced a medical examination form dated June 8, 2001 which purports to be filled out either by or on behalf of Plaintiff and signed by Plaintiff. The pertinent representations on this form state that Plaintiff has never been restricted in his work due to health, he never has had any serious ill effects from work, and that there is no type of work he could not perform due to health reasons. Plaintiff claims he did not fill out or sign this

form and that he has never seen this form before it was produced by Defendant.

Ten months after Plaintiff began working for Defendant, in December of 2001, Plaintiff's supervisor, Roger Kight ("Kight") signed a letter which was written by co-employee Cecil Hall. This letter was submitted to the Veteran's Administration to help Plaintiff obtain a disability pension for exposure to asbestos while in the United States Navy. This letter specifically references Plaintiff's problems with breathing when lifting and/or carrying objects and climbing ladders. Although the letter was signed by Plaintiff's supervisor under unusual circumstances which seem to be most appropriately described as a favor, it is not claimed that a copy of the letter was otherwise sent, given, or intended for Defendant.

Two letters were sent to Defendant complaining about Kight in December of 2002. These letters bear Plaintiff's name, however, Plaintiff claims that he did not sign the letters and further claims they were dictated by the store manager, Steve Sinor ("Sinor"), to Roberta Hodges, Plaintiff's girlfriend, in an attempt to have Plaintiff's supervisor, Kight, terminated. These letters do not complain of age discrimination, but rather Kight's poor management skills and practice of taking credit for the work of others. However, Plaintiff did give a written statement to the Human Resources Manager Grant Bagwell ("Bagwell") which appears to comport with the statements contained in the letters. Plaintiff agrees he gave the statement, but states that it was given under a directive from Bagwell to misrepresent the facts of the investigation of Kight. Plaintiff further states that Bagwell formulated and wrote out some of the answers attributed to Plaintiff.

Kight was eventually terminated from Defendant's employment. On March 25, 2003, three months after Kight's termination, Plaintiff wrote a letter to Bagwell complaining of age discrimination against Sinor and stating that he was physically incapable of fulfilling all of his job

duties requested by Sinor due to his disability.  Bagwell treated this letter as a request for accommodation.  On April 2, 2003 Defendant claims that Plaintiff was put on temporary medical leave pending the completion of a medical form, Defendant's "Physical Capabilities Form," by his doctor.  Plaintiff claims he was terminated on this date and denies that he was ever given the form.  Plaintiff never completed the form.  Plaintiff provided information on his diagnosis in his own words as contained in a letter to Defendant dated March 25, 2003.  However, he did not document any limitations or restrictions.

On April 14, 2003, Plaintiff took a job with O'Reilly's Auto Parts, a competitor to Plaintiff.  Defendant claims that on April 24, 2003 it terminated Plaintiff for working for a competitor.  Plaintiff claims he was terminated by Jason Greenwood and Steve Sinor on April 2, 2003.  Bagwell stated that he sent Greenwood and Sinor to place Plaintiff on temporary medical leave at the direction of Libby Rabun.  Ms. Rabun does not recall giving this direction to Bagwell, but she was in contact with Bagwell regarding Plaintiff and concurred via email on April 15, 2003 that temporary medical leave was appropriate for Plaintiff.  Todd Sittig is also attributed with "suspending" Plaintiff, although he agrees Rabun and Bagwell were dealing with Plaintiff's situation.

Plaintiff further claims that throughout his tenure with Defendant, there were daily comments to him and other employees calling him an "old fart" "old man" or "that sick old man."  Most of these were made by Sinor.  One instance in particular, on Plaintiff's birthday, Sinor stated over the intercom system that "it is 10:00, anyone over 50 needs to take your pee break now."  Plaintiff also states that Sinor told him that he did not like working with old people and that he would get rid of the old people if he could.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) Federal Rules of Civil Procedure provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fry v. Holmes Freight Lines, Inc.*, 72 F. Supp. 2d 1074, 1075 (W.D. Mo. 1999). When ruling on a motion for summary judgment, the court should view the facts in the light most favorable to the adverse party and allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *See id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Reed v. ULS Corp.,* 178 F.3d 988, 900 (8th Cir. 1999)).

Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Cunningham v. Kansas City Star Co.*, 995 F. Supp. 1010, 1014 (W.D. Mo. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

In the case where both parties have filed cross-motions for summary judgment, the legal standard does not change. Each motion must be evaluated independently, with facts viewed in a light most favorable to the nonmoving party. *See, e.g.*, *St. Luke's Methodist Hosp. v. Thompson*, 182 F. Supp. 2d 765, 769 (N.D. Iowa 2001).

III. DISCUSSION

A. Age Discrimination[1]

    i. *Direct Evidence*

Age Discrimination claims must meet one of two analytical frameworks. A case must show direct or circumstantial evidence of discrimination based upon age. Plaintiff first claims that he has direct evidence of age discrimination. Direct evidence of discrimination is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Russell v. City of Kansas City, Missouri,* 414 F.3d 863, 866 (8th Cir.2005) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir.2004)); *see, e.g., E.E.O.C. v. Liberal R-II School Dist.,* 314 F.3d 920, 924-25 (8th Cir.2002) (holding that a bus driver's allegation that the superintendent told him the school board felt he "was too old to drive a bus" and the superintendent's comment to the unemployment board that plaintiff was "now 70 1/2 years of age" constituted direct evidence of age discrimination); *Kneibert v. Thomson Newspapers, Mich. Inc.*, 129 F.3d 444, 452 (8th Cir.1997) (holding that the statement of a decision-maker to a terminated editor that he "had no use for a senior editor" but rather needed "three young editors" for the news department was direct evidence).

When an employee produces direct evidence that an illegitimate criterion such as age "played a motivating part in [the] employment decision," *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258

---

[1] Plaintiff asserts claims under the ADEA and the MHRA as two separate counts. However, because the MHRA is patterned after the ADEA, courts have consistently held the analysis to be the same for both. *See, e.g.*, *Fast v. Southern Union Co.*, 149 F.3d 885, 889 (8th Cir. 1998).

-5-

Case 6:04-cv-03048-RED   Document 39   Filed 02/23/06   Page 5 of 14

(1989), the burden-shifting standards of *Price Waterhouse* come into play. In such cases, "the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [illegitimate criterion] into account." *Id.*

*Price Waterhouse* defines the term "direct evidence" negatively to exclude "stray remarks in the workplace," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself." *Price Waterhouse,* 490 U.S. at 277 (O'Connor, J., concurring). "Stray remarks" will not suffice to invoke the *Price Waterhouse* formula, "[d]irect evidence may include evidence of actions or remarks of the employer that reflect a discriminatory attitude." *Gray v. University of Ark.,* 883 F.2d 1394, 1398 (8th Cir.1989). Comments which demonstrate a "discriminatory animus in the decisional process[,]" *Price Waterhouse,* 490 U.S. at 278 (O'Connor, J., concurring), or those uttered by individuals closely involved in employment decisions may constitute direct evidence within the meaning of *Price Waterhouse. See Burns v. Gadsden State Community College,* 908 F.2d 1512, 1517-19 (11th Cir.1990) (The statement that "no woman would be named to a B scheduled job" was direct evidence of discriminatory motive when its author made the employment decision at issue.); *E.E.O.C. v. Alton Packaging Corp.,* 901 F.2d 920, 923-25 (11th Cir.1990) (Statement made by person responsible for promotion decisions that "if it was his company, he wouldn't hire any black people" constituted direct evidence.).

Plaintiff claims he has shown direct evidence of discrimination through comments made to Plaintiff and Hall by Sinor that Sinor did not like working with old people, that he would get rid of old people in the store if he could, and that older people were too sick, too tired, unable to follow directions, and inflexible to the new changes Defendant had. Sinor also made a comment over the

-6-

store intercom on Plaintiff's birthday, December 31, regarding older employees needing a restroom break. Plaintiff characterizes Sinor as a decision maker because he was the "hiring manager." However, Plaintiff has only brought forth evidence that others *believed* Sinor to be a decision maker, not that he *actually* made decisions regarding employment. Viewing the facts in the light most favorable to Plaintiff, it appears that Sinor was the one who told him he was fired in the April 2 meeting. In the absence of any other claimed evidence it is not a reasonable inference to conclude that Sinor was the one who made the decision to terminate Plaintiff, rather than he merely delivered the news.

As no evidence has been produced to show that Sinor is a decision maker, rather than just believed by some employees to be a decisionmaker, the comments made by him are insufficient to establish direct evidence of discrimination under *Price Waterhouse*. Moreover, even if Sinor was seen as a decisionmaker, there is no link between the comments made and the decision to terminate Plaintiff. Plaintiff does not claim that any of these comments were made contemporaneously with the decision to terminate him. In fact, there is no indication of the temporal relation of these comments and the decision to terminate Plaintiff except for the restroom break comment. This comment was made at the end of December, at least three months prior to Plaintiff's termination.

ii. *Circumstantial Evidence*

In the absence of direct evidence of discrimination, Courts apply the "basic tripartite pattern of proof (prima facie case--rebuttal--pretext)" as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this three-part burden shifting framework, Plaintiff first must establish a prima facie case of age discrimination by showing he (1) was at least 40 years old, (2) was terminated, (3) was meeting Defendant's reasonable expectations at the time of his termination, and

(4) was replaced by someone substantially younger.[2] *See McDonnell Douglas,* 411 U.S. at 802; *Hopper v. Hallmark Cards, Inc.,* 87 F.3d 983, 988 (8th Cir.1996). If Plaintiff succeeds in establishing his prima facie case, a rebuttable presumption of unlawful discrimination is created. *Kneibert v. Thomson Newspapers, Mich., Inc.,* 129 F.3d 444, 451-52 (8th Cir.1997). Defendant must then rebut Plaintiff's prima facie case by producing evidence of a legitimate, nondiscriminatory reason for terminating Plaintiff. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000) ("This burden is one of production, not persuasion; it 'can involve no credibility assessment.'") (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509 (1993)); *Kneibert,* 129 F.3d at 452. If Defendant meets its burden of production, the presumption of intentional discrimination disappears, and Plaintiff must then show Defendant's reason for termination is a pretext for intentional age discrimination. *Kneibert,* 129 F.3d at 452.

In this case, Plaintiff clearly does not meet the forth criteria of a prima facie case. There is no evidence presented by Plaintiff as to whether Plaintiff was replaced at all, and certainly no indication he was replaced by a younger person.

---

[2] In his Suggestions in Opposition (Doc. 33), Plaintiff characterizes the elements of the prima facie case as including the fourth element of "circumstances exist which allow the Court to infer unlawful discrimination." However, this is the correct articulation of the elements of a reduction in force case. The Court can find no mention or inference, save this articulation of elements, which classifies this case as a reduction in force case. Thus, the fourth element is that of a younger replacement. *See Rinehart v. City of Independence, Mo.*, 35 F.3d 1263, 1267-68 (8th Cir. 1994) (holding that the correct fourth element in a non reduction-in-force case is that the plaintiff was replaced by someone younger and error in the district court to require "additional circumstances" evidence.)

B.  Disability Discrimination[3]

The ADA affords protection from discrimination to any "qualified individual with a disability." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, Plaintiff must show 1) he has a disability within the meaning of the ADA, 2) he is qualified to perform the essential functions of his job, with or without reasonable accommodation, and 3) he suffered an adverse employment action because of his disability. *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1135 (8th Cir.1999) (en banc).

A disability "within the meaning of the ADA" is "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). For purposes of this discussion, the Court assumes Plaintiff suffers from a physical impairment, that is, a "condition . . . affecting one or more . . .body systems . . .."29 C.F.R. § 1630.2(h). An impairment is "substantially limiting" if it renders an individual unable to perform a major life activity which the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and working, 29 C.F.R. § 1630.2(i), as well as sitting, standing, lifting, and reaching. *Fjellestad v. Pizza Hut of Am., Inc.,* 188 F.3d 944, 948 (8th Cir.1999).

Several factors are considered in determining whether a person is substantially limited in a

---

[3] Similarly to the ADEA claim Plaintiff has asserted one count of his complaint under the ADA and one under the MHRA for the same conduct. A claim under the MHRA is analyzed in the same manner as a claim under the ADA. *See, e.g., Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir.1998).

major life activity 1) the nature and severity of the impairment, 2) its duration or anticipated duration, and 3) its long-term impact. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). Inability to perform one particular job does not constitute a substantial limitation on working. *Id.* Instead, a plaintiff must show that because of his impairment he has suffered a significant reduction in meaningful employment opportunities. *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 488 (8th Cir.1996). To prove disability, plaintiffs must submit more than just evidence of a medical diagnosis of an impairment. *Id.*"Instead, the ADA requires those 'claiming the Act's protection . . .to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.' " *Id.* at 198 (quoting *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567 (1999)).

In this case, Plaintiff claims his condition interfered with the major life activities of breathing and working. Plaintiff has submitted evidence of a medical diagnosis and of a five(5) pound lifting restriction that was given to him after his employment with Defendant had been terminated. Plaintiff has not submitted any evidence to show that the extent of the limitation in his own experience is substantial. Indeed, at the time of his deposition Plaintiff was working part-time where he could "pace himself." Thus, Plaintiff does not meet the first requirement of a prima facie disability case unless he can show he was regarded as disabled by Defendant.

"Read in conjunction with subsection (A), subsection (C) prescribes that a person is considered disabled for purposes of the ADA if that person is 'regarded as having' an impairment that 'substantially limits' a 'major life activit[y].' " *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995) (quoting 42 U.S.C. § 12102(2)(A), (C)). The regulations implementing the ADA include working in the definition of major life activities, *see* 29 C.F.R. § 1630.2(i) (1997), which,

-10-

if "regarded as substantially limited by an impairment," qualifies an individual as disabled. *See Wooten,* 58 F.3d at 385. A finding that a plaintiff is substantially limited in working requires a showing that his or her overall employment opportunities are limited. *See Aucutt v. Six Flags Over Mid-America, Inc.,* 85 F.3d 1311, 1319 (8th Cir.1996). Thus, the employer would have to regard Plaintiff as limited in that capacity. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i) (1997).

Plaintiff claims that he was "regarded as disabled" because of the limited role in which he was hired, when Defendants allowed him to perform tasks that were not as physically demanding. Additionally, Plaintiff claims that the Defendant knew of his disability because he would leave for doctor's appointments, carry his x-rays to work, and had been hospitalized for an extended period during the first few weeks of his employment.

The Eighth Circuit has previously stated that "being regarded as having a limiting but not disabling restriction [ ] cannot be a disability within the meaning of the ADA." *Conant v. City of Hibbing,* 271 F.3d 782, 785 (8th Cir. 2001). Moreover, awareness of a plaintiff's past medical problems does not establish that an employer regarded an employee as disabled. *See id.* at 786.

According to Plaintiff, Defendant "regarded" Plaintiff as disabled from the outset of his employment. Certainly, the Defendant did not find Plaintiff to be limited in the major life activity of "working" because it hired Plaintiff. Defendant could have perceived Plaintiff as disabled in the major life activity of breathing. However, the evidence Plaintiff presents, which is clearly in conflict with the disputed medical questionnaire, shows more of an understanding by Defendant of a limitation rather than a disabling restriction. Plaintiff stated that at the outset of his employment he

-11-

would at times help with "putting up truck" and other activities that involved climbing and lifting. There is no evidence that Defendant perceived Plaintiff as unable to do these activities.

Even if Plaintiff is considered to be "disabled" for purposes of establishing the first part of the requisite prima facie case, Plaintiff clearly fails to meet the third part of the prima facie case – that he suffered an adverse employment action due to his disability. Although the date is disputed, it is agreed that Plaintiff was terminated from his employment with Defendant. However, Plaintiff has produced no evidence that indicates he was terminated because of his disability. Plaintiff does mention a request for accommodation immediately proceeding his termination, but that is a matter for Plaintiff's retaliation claim. In this claim, relative to discrimination based upon disability, there is no indication that Plaintiff could not do his job or that he was not doing it at the time of his termination. In fact, his contemporaneous evaluations show that Plaintiff was performing his job adequately. Defendant did not mention job performance or ability in any manner in connection to his purported termination. In no way was Plaintiff's disability connected to his termination, in fact, Plaintiff's brief does not even address this point.

Plaintiff does cite *Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011 (8th Cir. 2000) and argues that Defendant failed to participate in an interactive process. However, the Court notes that there is "no per se liability under the ADA if an employer fails to engage in an interactive process." *Id.* at 1021. Moreover, the interactive process, or failure by an employer to participate, is evidence for summary judgment purposes of an employer's bad faith relative to reassignment or accommodating Plaintiff.

First, the Court notes that this is not a case where Plaintiff appears to be claiming a failure by Defendant to accommodate him. Rather, he is arguing that he was terminated as a result of his

-12-

Case 6:04-cv-03048-RED   Document 39   Filed 02/23/06   Page 12 of 14

disability. According to Plaintiff in the case at bar, Defendant knew of his disability or limitation at the time of his hiring and did accommodate him with fewer requirements for helping with the retail aspect of the position. To the extent the interactive process is relevant to Plaintiff's letter to Bagwell requesting accommodation prior to his termination, Plaintiff's evidence still does not demonstrate any connection between his disability and his termination, and thus fails to meet the prima facie case.

C. Retaliation Claim[4]

The *McDonnell Douglas* burden-shifting analysis "governs the order and allocation of proof for retaliation claims." *Kratzer v. Rockwell Collins. Inc.,* 398 F.3d 1040, 1048 (8th Cir.2005). Under this analysis, a plaintiff must first establish a prima facie case by showing that he or she: "(1) engaged in statutorily protected activity; (2) he [or she] suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." *EEOC v. Kohler Co.,* 335 F.3d 766, 772 (8th Cir.2003). If the prima facie case is met, the burden shifts to the defendant to produce "a legitimate, non-retaliatory reason for the action it took against the plaintiff." *Id.* If the defendant satisfies its burden, the plaintiff is "then obliged to present evidence that (1) creates a question of fact as to whether [defendant's] reason was pretextual and (2) creates a reasonable inference that [defendant] acted in retaliation." *Smith,* 302 F.3d at 833.

In this case, Plaintiff appears to have engaged in a statutorily protected activity when he requested accommodation from Bagwell in his letter. This letter mentioned that Plaintiff had made age discrimination claims and that he needed accommodation for his disability. Also, it is clear that

---

[4] Plaintiff's retaliation claims under the MHRA, ADEA and ADA, although set out in separate counts of the Complaint, are analyzed similarly. *See, e.g., Kneibert v. Thomson Newspapers, Michigan Inc*., 129 F.3d 444, 455 n.7(1997).

-13-

Plaintiff was terminated, which meets the requirements of an "adverse employment action." Plaintiff states that he was terminated within a few days of writing this letter. Construing the facts in the light most favorable to the Plaintiff, the Defendants did not offer him any explanation for his termination. The Court notes that this dispute of facts is sufficient for summary judgment purposes, due to the favorable light in which the Court views Plaintiff's version of the facts. However, Defendant has also shown considerable evidence that it did indeed offer Plaintiff temporary medical leave and a chance to demonstrate what accommodation he needed. The weight and credibility of this evidence is best left to the jury to decide.

Defendants have offered a legitimate non-discriminatory reason for Plaintiff's termination – that he took a job with a competitor, O'Reilly's, on April 24. However, viewing the facts in the light favorable to Plaintiff, he was terminated on April 2, and thus a jury could find that Defendant's proffered reason was merely a pretext. Summary judgment is due to be denied on Plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 27 ) is due to be **GRANTED IN PART and DENIED IN PART**. Defendant's Motion for Summary Judgment is **GRANTED** on Plaintiff's claims of age discrimination and disability discrimination. However, Summary Judgment is **DENIED** on Plaintiff's retaliation claim.

**IT IS SO ORDERED.**

DATE: February 23, 2006  */s/ Richard E. Dorr*
RICHARD E. DORR, JUDGE
UNITED STATES DISTRICT COURT

-14-

Case 6:04-cv-03048-RED   Document 39   Filed 02/23/06   Page 14 of 14